**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| BEN EMMOLE, | ) |
|     Plaintiff, | ) No. 18-cv-50166 ) |
| v. | ) The Honorable Philip G. Reinhard ) |
| ILLINOIS DEPARTMENT OF CORRECTIONS, | ) Magistrate Judge Iain Johnston ) ) |
|     Defendant. | ) ) |

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant, Illinois Department of Corrections ("Defendant" or "IDOC"), by its attorney, Kwame Raoul, Illinois Attorney General, submits the following Memorandum of Law in support of its Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c):

## I. INTRODUCTION

In June 2012, Plaintiff Ben Emmole ("Plaintiff") began his employment with the IDOC at Dixon Correctional Center ("Dixon") as a correctional officer and held this position until he was discharged on December 31, 2017 for violating IDOC's Affirmative Attendance policy. (DSOF ¶¶ 5, 65). Pursuant to IDOC policy, in order to request time off from his employment as a correctional officer, Plaintiff filled out and submitted notice of absence ("NOA") slips where Plaintiff wrote his name, the days off requested, and the type of benefit time he would use to cover his absences. (*Id.* ¶¶ 13, 34).

Starting in 2014, Plaintiff became a guardsman with the United States Air force and Air National Guard. (*Id.* ¶ 3). As part of his service with the military, Plaintiff was required to attend military drill trainings in August of 2014. (*Id.* ¶ 21). From August 2014 up until January 8 and 9 of 2016, Plaintiff followed IDOC policy and did not experience any problems with the IDOC in

1

its processing of NOA slips for absences due to his military service. (*Id*. ¶ 22). Plaintiff submitted NOA slips for the stated purpose of military drill trainings that were scheduled to occur on January 8 and 9, 2016; June 3 and 4, 2016; November 4 and 5, 2016; January 6 and 7, 2017; and March 31 and April 1, 2017. (*Id*. ¶¶ 35-45). Plaintiff indicated "military drill" in each comment section of the NOA slips. (*Id*.). These dates were all initially approved by Defendant. *Id*. However, Plaintiff failed to attend military drill training on any of these days, failed to inform Defendant that he did not attend his military drill trainings, and failed to attend work at Dixon on all of these days. *Id*.

In April 2017, the IDOC, through Investigator Troy Morse ("Morse"), discovered that Plaintiff was not attending his scheduled military drill trainings as he represented to the IDOC. (*Id*. ¶ 55). Specifically, Morse learned that Plaintiff was not attending his military drill trainings ███ ████████████████████████. (*Id*. ¶ 55). Morse then contacted the United States Air Force and National Guard and confirmed that Plaintiff did not attend military drill trainings on April 1, 2017 and April 2, 2017. (*Id*. ¶ 56). Morse reported this information to Dixon's Warden, John Varga ("Varga"), and the existing Internal Affairs Supervisor/Correctional Lieutenant, Daniel Newman ("Newman"). (*Id*.).

Based upon this information, Plaintiff was referred to the Employee Review Board (ERB) for violating IDOC Administrative Directive 03.01.301 and his unauthorized absences. (*Id*. ¶ 57). Pursuant to this Administrative Directive, an "unauthorized absence" is an absence for which time is not approved. (*Id*. ¶ 30). Additionally, Plaintiff submitted NOA slips for time off on June 22, 2017, June 23, 2017, June 24, 2017, and July 5, 2017 due to a death in his family that occurred on June 26, 2017. (*Id*. ¶ 47). On each of these days, Plaintiff spoke with someone at Dixon's armory to call off from work and when he returned to work he filled out call-off slips. (*Id*. ¶ 60). On June 27, 2017, Kathy Newstrand ("Newstrand"), IDOC's HR representative, was informed that Plaintiff

2

had three consecutive absences and mailed him an eligibility notice of rights and responsibilities of employee and family's serious medical condition with certification form to his last known address. (*Id*. ¶ 50). The eligibility notice and medical certification form warned Plaintiff that the failure to return a completed certification by July 14, 2017 may result in the denial of FMLA protection or a delay to the start of any of its entitlements. (*Id*. ¶ 51). Plaintiff never submitted the required documentation to the IDOC to request leave under the FMLA. (*Id*. ¶ 48). On July 18, 2017, the IDOC sent Plaintiff a denial of FMLA protection designation notice because Plaintiff did not submit a signed medical certification form. (*Id*. ¶ 52). Plaintiff does not have any reason to believe that the IDOC would have denied his FMLA time for June 22, 2017, June 23, 2017, June 24, 2017, June 27, 2017, and July 5, 2017 if he submitted the completed medical certification form. (*Id*. ¶ 53). If Plaintiff followed IDOC procedure/policy and submitted the appropriate documentation, it would have granted him FMLA protection if it timely received his medical certification form for June 22, 2017, June 23, 2017 and June 24, 2017. (*Id*. ¶ 54).

Ultimately, on August 16, 2017, Plaintiff attended two ERB hearings with union representation. (*Id*. ¶ 62). Sonja Nicklaus ("Nicklaus"), the Assistant Warden of Programs at Dixon, served as the hearing officer for both of these hearings and found Plaintiff violated Defendant's Affirmative Attendance policy. (*Id.* ¶¶ 24, 63). At the conclusion of the first hearing, Nicklaus found that Plaintiff had incurred 13 unauthorized absences and failed to attend military drill on the following days: January 8, 2016, January 9, 2016, April 1, 2016, April 2, 2016, April 3, 2016, June 3, 2016, June 4, 2016, June 5, 2016, November 4, 2016, November 5, 2016, November 7, 2016, January 6, 2017, January 7, 2017, January 8, 2017, March 3, 2017, April 1, 2017, April 2, 2017. (*Id*. ¶¶ 58, 63). This placed him at thirteen (13) occurrences of unexcused time which under the progressive discipline outlined in the collective bargaining agreement and

IDOC policy placed him at the following level of discipline: termination. (*Id.* ¶¶ 31, 63). At the conclusion of the second hearing, Plaintiff had a total five additional unauthorized absences for failing to provide the appropriate medical documentation to cover his absences for sick time usage. (Id. ¶¶ 29, 34, 61). Accordingly, Nicklaus recommended that Plaintiff's employment be terminated for violations of Defendant's Administrative Directive 03.01.30, Defendant's Affirmative Attendance policy. (*Id.* ¶¶ 61, 64, 65). Nicklaus's recommendation to terminate Plaintiff was subsequently reviewed by Varga and Acting Director John Baldwin for concurrence. (*Id.* ¶ 27).

Plaintiff brings suit against Defendant under the Uniformed Service Members Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301 *et seq.*, and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Defendant moves for summary judgment on all of Plaintiff's claims.

## II.　SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Porter v. City of Chi.*, 700 F.3d 944, 950 (7th Cir. 2012). "A genuine issue of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Anderson*, 477 U.S. at 248). Summary judgment must be granted if the nonmoving party is "unable to 'establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Benuzzi v. Bd. of Educ. of Chi.*, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### III. ARGUMENT

**A. Plaintiff was not Discriminated Against Based on his Military Status.**

According to Section 4311 of USERRA, service members "shall not be denied initial employment, reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership." 38 U.S.C. § 4311(a). In order to survive summary judgment on his USERRA claim, Plaintiff must establish: (a) membership in uniformed service; (b) performance of service or an obligation to perform service in a uniformed service; (c) a denial of retention in employment or any benefit of employment by his employer on the basis of that membership or performance of service or obligation and (d) that the employee's military service or obligation to serve was a motivating factor in the employer's adverse decision. *Ashman v. Winnebago Count y. Sheriff's Dept.*, 2015 WL 641784, *4 (N.D. Ill. Feb. 13, 2015) (citing 38 U.S.C. § 4311(a) & (c)(1)).

Put differently, under the burden-shifting provision in Section 4311, Plaintiff must show that his service membership was "a motivating factor in the employer's action." *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009). If he is able to do so—which Defendant denies is possible here—Defendant must then "prove that the action would have been taken in the absence of such membership." *Id.* This means that if Defendant had two reasons for taking an adverse action against Plaintiff, one of them forbidden by the statute and the other not, and Defendant can show that even if the forbidden one had been absent the adverse action would still have been taken, Plaintiff loses his alleged discrimination claim under USERRA. *Madden v. Rolls Royce Corp.,* 563 F.3d 636, 638-639 (7th Cir. 2009) (holding that defendant's refusal to offer permanent job was based on plaintiff's incompetence, not military obligations, and defendant would not have hired plaintiff due to his poor work record and resume fraud regardless of his military obligations). In the present case, Plaintiff failed to establish a prima facie case of discrimination based on his

5

military status. Notwithstanding this failure, Plaintiff's violations of IDOC's Affirmative Attendance policy were legitimate, non-discriminatory reasons and his termination would have occurred anyway once he reached twelve (12) unauthorized absences.

1. *Plaintiff Cannot Establish a Prima Facie Case of Discrimination Under USERRA.*

Plaintiff cannot show that (1) Defendant terminated him because of his obligations to attend military drill trainings; and (2) Plaintiff's military status or his service obligations to attend military drill trainings were motivating factors in Defendant's decision to terminate him. Plaintiff's own admissions coupled with IDOC's history of approving his NOA slips for military purposes since August 2014 preclude Plaintiff's alleged USERRA claim of discrimination. *(See DSOF ¶¶ 21-22).* Plaintiff admits that he had no problems with Defendant's processing of his NOA slips for military purposes starting as early as August 2014. (*See Id*. ¶ 22). In December 2017, Plaintiff was discharged from the IDOC—approximately three years and four months after it had knowledge of Plaintiff's military status and had routinely processed his requested time off for military purposes. (*Id*. ¶ 5).

Moreover, Plaintiff merely concludes without any evidentiary support that he was discriminated against by Baldwin, Varga, and Nicklaus for his termination and written up for using benefit time he claims he had available for use in 2016 and 2017. (*Id*. ¶ 67). However, Plaintiff cannot point to any evidence that these individuals had any discriminatory animus against him because of his military status or obligations to attend drill trainings. To the contrary, Plaintiff admits IDOC had knowledge of his military status back in August 2014 and routinely approved his absences for "military drill." (*See id*. ¶¶ 21-22). Plaintiff must present and rely on more than mere speculation or conjecture in order to defeat summary judgment. *See Borcky v. Maytag Corp*., 248 F.3d 691, 697 (7th Cir. 2001) (citing *Armadio v. Ford Motor Co*., 238 F.3d 919, 927 (7th Cir.

6

2001); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) ("[A] party must present more than mere speculation or conjecture to defeat a summary judgment motion.")).

### 2. *Plaintiff did not Meet Defendant's Legitimate Work Expectations.*

Plaintiff must show that he was meeting his employer's legitimate expectations at the time of the adverse employment action, which includes evidence that he did not violate Defendant's policies. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010)[1]. Courts look at the employee's "performance through the eyes of [his] supervisors." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008) (citation omitted). In the present case, Plaintiff cannot meet his burden because he did not meet his supervisor's work expectations and failed to comply with IDOC policies and procedures. Specifically, Plaintiff received discipline following his ERB hearings on August 16, 2017 for violating Defendant's Administrative Directive 03.01.30 ("Directive 03.01.30"). (DSOF ¶¶ 61-62). Newman, Plaintiff supervisor, believed that Plaintiff abused his time while working with the IDOC due to his multiple call-ins and conversations Newman personally had with the Plaintiff. (*Id.* ¶ 28). There are limitations to when correctional officers can use their benefit time based on the needs of the facility. (*Id.* ¶ 18). Dixon is classified as a medium security facility with a high security portion within its perimeter. (*Id.* ¶ 19) There are security posts that require staffing twenty-four (24) hours a day and seven (7) days a week. (*Id.*). Benefit time is approved based on officer seniority and there are a limited number of employees that are allowed to take off on each shift. (*Id.* ¶¶ 16-17).

In April 2017, Morse learned that Plaintiff was not attending military drill trainings and received information that Plaintiff was observed at a casino during his approved time off for "military drill." (*Id.* ¶ 55). Plaintiff's military unit was contacted for confirmation and this

---

[1] The courts have analyzed USERRA claims under Title VII discrimination framework. *Helms v. Village of Clarendon Hills, Illinois*, 2019 WL 2409596, *5 (N.D. Ill. June 7, 2019).

information was reported to Newman and Varga. (*Id*. ¶ 56). According to Administrative Directive 03.01.301, an "unauthorized absence" is an absence for which time is not approved. (*Id*. ¶ 30). Plaintiff's absences for the stated purpose of attending "military drill" were determined unauthorized in violation of policy when the IDOC learned that Plaintiff failed to attend military drill training on 13 occasions despite providing "military drill" as the basis for his requested time off. (DSOF ¶¶ 35-44). Under Administrative Directive 03.01.301 and AFSCME union contract, the IDOC shall impose progressive discipline for unauthorized absences and once the employee reaches the 12th offense, discharge is mandatory. (*Id*. ¶ 31). At the conclusion of Plaintiff's ERB hearing regarding Plaintiff's unauthorized absences for failing to attend his military drill trainings, he had 13 unauthorized absences and subject to mandatory, automatic discharge. (*Id*. ¶ 31, 63, 64, 65).

Through Plaintiff's own violations of Defendant's policy, he failed to meet Defendant's legitimate work expectations by incurring unauthorized absences that under progressive discipline resulted in his termination. Accordingly, Plaintiff cannot show that he was meeting his employer's legitimate job expectations at the time he was disciplined in December 2017. *See Swearnigen v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 861, 863 (7th Cir. 2010) (concluding the plaintiff did not meet legitimate job expectations because he violated general orders); *Hall v. Vill. of Flossmoor Police Dep't.*, No. 11 C 5283, 2012 WL 6021659 (N.D. Ill. Dec. 4, 2012) (holding the plaintiff did not meet legitimate expectations because he violated policies).

3. ***Plaintiff Cannot Establish That Similarly Situated Employees Outside of his Military Status Were Treated Differently.***

Plaintiff has not presented any admissible evidence that any other employees outside of his protected class were treated more favorably than him. To survive summary judgment "by showing differential treatment of a similarly situated employee, a plaintiff must identify a comparator who

8

is 'directly comparable to [him] in all material respects.'" *Williams v. Office of Chief Judge of Cook Cnty. Ill.*, 839 F.3d 617, 626 (7th Cir. 2016) (quoting *Perez v. Thortons, Inc.*, 731 F.3d 699, 704 (7th Cir. 2013)). "[I]n disciplinary cases—in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason—a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000) (overruled on other grounds).

"The goal of the comparison analysis is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable—discriminatory animus." *Formella v. Brennan*, 817 F.3d 503, 512 (7th Cir. 2016) (internal quotation marks and citation omitted). Typically, a plaintiff needs to show that the other employee "dealt with the same supervisor, [was] subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish his conduct or the employer's treatment of him." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008) (internal quotation marks and citation omitted).

In the present case, Plaintiff identifies two individuals as alleged comparators: . (DSOF ¶¶ 73, 77). "[S]imilarly situated employees must be directly comparable to the plaintiff in all material respects, which includes showing that coworkers engaged in comparable rule or policy violations." *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365-66 (internal quotation marks and citations omitted). However, both of

9

these individuals are distinguishable cases for many reasons and not relevant for comparative purposes.

Unlike the Plaintiff, ██████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

As such, Plaintiff cannot show that that these alleged comparators violated the same policies and were not disciplined by the Defendant. *See Peters v. Renaissance Hotel Operating Co.,* 307 F.3d 535, 546 (7th Cir. 2002) ("The burden is on [plaintiff] to establish the similarity between himself and the proposed comparable employees."); *see also Patterson*, 589 F.3d at 366; *Nichols v. S. Illinois Univ.-Edwardsville*, 510 F.3d 772, 786 (7th Cir. 2007) (granting defendant's motion for summary judgment on plaintiffs' retaliation claim where they failed to show that any similarly situated employees engaged in the same actions that were used as basis for plaintiffs' termination but were treated more favorably); *Little v. Ill. Dep't of Revenue,* 369 F.3d 1007, 1012 (7th Cir. 2004) ( "A similarly-situated employee must have been disciplined, or not, by the same

10

decision-maker who imposed an adverse employment action on the plaintiff." (citing *Patton v. Indianapolis Pub. Sch. Bd.,* 276 F.3d 334, 338 (7th Cir.2002); *Radue,* 219 F.3d at 617–18.

Therefore, this Court should grant summary judgment as Plaintiff is unable to adduce sufficient evidence that would permit a reasonable factfinder to conclude that his military status caused his discharge. *See* Ortiz v. Werner Enterprises, Inc., 834 F.3d 760, 765 (7th Cir. 2016).

**B. Defendant had Legitimate, Non-Discriminatory Reasons for its Actions.**

Assuming *arguendo* that Plaintiff is able to establish a *prima facie* claim of discrimination under USERRA, which Defendant denies is possible here, the burden would shift to Defendant to "prove that the action would have been taken in the absence of such membership." *Crews*, 567 F.3d at 684. Preliminarily, Plaintiff cannot point to his termination for violations of Directive 03.01.301 as an illegitimate reason because Defendant has a legitimate interest in its employee's attendance and reliability. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1115 (7th Cir. 1992). In addition, policy violations and unauthorized absences have been recognized as a legitimate basis to terminate an employee. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir.1998) ("Absenteeism and tardiness have been recognized by this Court as legitimate, nondiscriminatory reasons for an employer to terminate an employee.").

Moreover, it is well-established that the Court is not a "super personnel department that second-guesses employers' business judgments." *Riley v. Elkhart Comm. Schs.*, 829 F.3d 886, 895 (7th Cir. 2016) (internal quotation marks and citation omitted). This Court should not do so here. As discussed above, Plaintiff was disciplined due to his violations of policy. After filing suit, Plaintiff readily admits that the IDOC initially approved his NOA slips for time off on January 8, and 9, 2016; June 3 and 4, 2016; November 4 and 5, 2016; January 6 and 7, 2017; and March 31, 2017 and April 1, 2017 for military purposes. (DSOF ¶¶ 35, 37, 39, 41, 43). Plaintiff admits

11

further that he did not attend military drill trainings due to personal reasons, ████████ ████, on January 8, and 9, 2016; June 3 and 4, 2016; November 4 and 5, 2016; January 6 and 7, 2017; and March 31, 2017 and April 1, 2017. (*Id*. ¶¶ 36, 38, 40, 42, 44). It is also undisputed that Plaintiff failed to inform the IDOC that he did not attend military drill trainings, nor did he attend work with the IDOC on these days. (*Id*.). Any form of military discrimination claim against Defendant fails when (1) Plaintiff was initially approved by Defendant to take time off for specific military purposes on January 8, and 9, 2016; June 3 and 4, 2016; November 4 and 5, 2016; January 6 and 7, 2017; and March 31, 2017 and April 1, 2017; (2) Plaintiff would not have had automatically had the approved time off using his own benefit time because IDOC's approval of benefit time (excluding sick time) at Dixon is based on an annual bidding process, officer seniority and staffing needs; (3) Defendant discovered Plaintiff was not in fact attending his military drill trainings; and (4) Defendant terminated him after finding 13 separate violations of Directive 03.01.301 when the same directive calls for automatic termination after the 12th violation. (*See id*. ¶¶ 15-18, 35-45) These were the very reasons that Nicklaus determined that Plaintiff violated Directive 03.01.301 and recommended he be discharged. (*See id*. ¶ 64). Accordingly, this Court must grant summary judgment in Defendant's favor.

## C. Plaintiff's FMLA Interference Claim Fails.

Under the FMLA, an eligible employee is entitled to twelve weeks of leave per year for a variety of reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition". *Scruggs v. Carrier Corp*., 688 F. 3d 821, 824 (7th Cir. 2012) (*citing* 29 U.S.C. § 2612(a)(1)(C)).

Plaintiff's admissions that he failed to follow IDOC policy unequivocally precludes his interference claim the FMLA. (*See* DSOF ¶¶ 52-53). In the present case, Plaintiff claims FMLA

interference for the five days: June 22, 2017, June 23, 2017, June 24, 2017, June 27, 2017, and July 5, 2017. (*Id.* ¶ 47). However, Plaintiff's mother passed away on June 26, 2017. (*Id.* ¶ 46). Under the FMLA, statutory protection for a family member ceases once the family member passes away. *Brown v. J.C. Penney Corp.*, 924 F. Supp. 1158, 1162 (S.D. Fl. Feb. 20, 1996). Thus, Plaintiff was not entitled to FMLA protection for June 27, 2017 and July 5, 2017. *See id.* Moreover, Plaintiff would have been discharged from the IDOC irrespective of Plaintiff's alleged requests for FMLA leave in June and July 2017. *See Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 804-805 (7th Cir. 2001)("…she [plaintiff] must prove that Beverly [defendant] would not have discharged her had she not taken FMLA leave."). Again, Nicklaus determined that Plaintiff had 13 unauthorized absences and should be discharged wholly independent from him taking leave on the first of the five days in June and July 2017. (DSOF ¶ 30, 31, 63, 64). Furthermore, even if the Court were to disregard these 13 absences, Plaintiff's June 27, 2017 and July 5, 2017 unauthorized absences placed him at fifteen occurrences of unexcused time which under the progressive discipline outlined in Directive 03.01.301 and the collective bargaining agreement warranted his termination. Summary judgment therefore should be granted on this basis.

Nonetheless, Plaintiff has the burden of proving FMLA interference. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 908 (7th Cir. 2008). In order to prove a FMLA interference claim, Plaintiff must show the following: (1) he was eligible for the FMLA's protections; (2) he was covered by the FMLA; (3) he was entitled to take leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) Defendant denied his FMLA benefits to which he was entitled. *Brown v. Auto Components Holdings, LLC*, 622 F.3d 685, 689 (7th Cir. 2010).

What constitutes sufficient notice is substantially decided by the employer. *McKenzie v. Seneca Foods Corp.*, 2017 EL 1155966, *3 (W.D. Wis. Mar. 27, 2017). According to Defendant's

13

policies, it requires that Plaintiff timely submit the medical certification form in order to process his FMLA leave requests. (DSOF ¶ 51). The Seventh Circuit has made clear that a defendant does not interfere with a plaintiff's FMLA rights when it requires compliance with its internal policies, including the return of a medical certification form, even if its policies impose stricter notice requirements than the FMLA. *See Brown*, 622 F.3d at 687 (holding no interference when employer required employee to report to work, return a specific form, or obtain a "call-in-code number over the phone within five days of her initial return-to-work date); *Lewis v. Holusum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002) (finding no interference when employer required employee to notify employer of her inability to work each day of her FMLA leave); G*illiam v. United Parcel Serv. Inc.*, 233 F.3d 969, 971-972 (7th Cir. 2000) (finding no interference when employer required employee to provide his supervisor with a return-to-work date by the third working day of FMLA leave).

Here, Plaintiff's failure to comply with Defendant's leave policies and procedures is sufficient grounds for denying his FMLA leave requests. *See* 29 C.F.R. § 825.302(d); *Richi v. SMC Corp.*, 632 F.3d 404, 411 (7th Cir. 2011). Newstrand learned that Plaintiff missed work for three consecutive days and without a request from Plaintiff sent him his notice of eligibility under the FMLA to his last known address. (DSOF ¶ 50). Plaintiff readily admits that he never submitted the required documentation to the IDOC to request days off under the FMLA when he was notified that he had to do so by July 14, 2017. (*Id*. ¶ 48). Plaintiff's failure to submit this form resulted in Newstrand sending him a denial notice on July 18, 2017. (*Id*. ¶ 52).

Accordingly, Defendant's Motion for Summary Judgment should be granted. *See Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 498 (7th Cir. 2014) (finding that the denial of a leave request for time falling outside of approved FMLA parameters "did not deny

14

[plaintiff] any right under the FMLA"); *McKenzie*, 2017 WL 1155966 at *5 (granting summary judgment in the defendant's favor on the plaintiff's FMLA interference claim when the plaintiff failed to follow the defendant's internal procedural requirements for FMLA leave and was fired for violating its attendance policy).

### D. Punitive Damages are not Available Against a State Agency

In his Amended Complaint, Plaintiff demands punitive damages. (Am. Compl. at 7, ECF No. 4). However, 42 U.S.C. § 1981a(b)(1) specifically states, "[a] complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice . . . ." Here, there is no dispute that Defendant is an agency of the State of Illinois, and thus punitive damages are not available. *Hildebrandt v. Illinois Dept. of Nat. Res.*, 347 F.3d 1014, 1032 (7th Cir. 2003) (finding, as a matter of law, plaintiff cannot recover punitive damages against the IDNR, a government agency).

WHEREFORE, Defendant, Illinois Department of Corrections, respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgment in its favor and against Plaintiff, Carla Little, and for any other relief this Court deems proper and just.

**KWAME RAOUL**  Respectfully submitted,

Attorney General of Illinois  *s/Phillip W. Rehani*
PHILLIP W. REHANI
Assistant Attorney General
Office of the Illinois Attorney General
100 West Randolph Street, 13th Floor
Chicago, Illinois  60601
(312) 814-3735
prehani@atg.state.il.us

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 6, 2019, he electronically filed the foregoing document with the Clerk of the Court for the Northern District of Illinois by using the CM/ECF system. Parties of record may obtain a copy through the Court's CM/ECF system.

/s/ <u>*Phillip W. Rehani*</u>