# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| Ben Emmole, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 CV 50166 |
| v. ) | |
| ) | Judge Philip G. Reinhard |
| Illinois Department of Corrections, ) | |
| ) | |
| Defendant. ) | |

## ORDER

For the reasons set forth below, defendant Illinois Department of Corrections' motion for summary judgment [41] is granted. This case is terminated.

## STATEMENT-OPINION

Plaintiff Ben Emmole was an employee with the Illinois Department of Corrections ("IDOC") as a correctional officer at Dixon Correctional Center ("Dixon") from June 2012 until his termination in late 2017. Emmole brought this action against IDOC for employment discrimination under the Uniformed Service Members Employment and Reemployment Act ("USERRA"), 38 U.S.C. § 4301, et seq., and the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. Emmole alleges IDOC discriminated against him because of his membership with the Illinois Air National Guard. Emmole further alleges IDOC denied him rightful benefits under the FMLA. Defendant IDOC filed a motion for summary judgment on September 6, 2019 [41]. Plaintiff filed a response to the motion on October 21, 2019 [52], and defendant filed a reply to the response on November 15, 2019 [57]. The matter is now ready for the court's review.

**FACTS**

The following facts are taken from the parties' Local Rule 56.1 statements of facts.

Plaintiff Emmole began his employment with IDOC at Dixon in June of 2012 as a correctional officer. He was terminated for cause by IDOC effective October 12, 2017. Emmole is also a resident of Dixon, Illinois, and has been a guardsman with the United States Air Force, National Guard since 2014. Defendant IDOC is an agency of the state of Illinois.

In January 2014, Emmole submitted a change of address form to Dixon reflecting 614 N. Brinton Avenue, Dixon, Illinois as his address. In September 2017, Emmole submitted a change of address form to Dixon reflecting 523 ½ Depot Avenue, Dixon, Illinois as his address.

Emmole was trained on IDOC's administrative directives and departmental rules. According to IDOC Administrative Directive 03.01.301, in order to request time off from IDOC employment, Emmole was required to submit a notice of absence slip ("NOA" slip) to his shift commander. On the NOA slip, Emmole would write his name, requested day(s) off, and the type of benefit time for use to cover the day(s) off. According to Kathy Newstrand, the human resources representative for Dixon, time off requests for holiday, compensatory, or personal business time are based on staffing needs and an established relief factor of how many employees can be off at any given time using benefit leave. Vacation days are given based on a bidding process and approved based on seniority and taking into account a limitation on the number of employees allowed to take off on each shift. Plaintiff began military drills in August of 2014, and from then until early January 2016, plaintiff did not experience any problems with IDOC processing his NOA slips for absences due to his military service. Emmole's direct supervisor starting in June 2017, Major Daniel Newman ("Newman"), testified that he believed Emmole abused time while working for IDOC due to Emmole's multiple call-ins and conversations he had with Emmole.

An "unauthorized absence" according to IDOC Administrative Directive 03.01.301 is an absence for which time is not approved. According to the progressive discipline of this Directive, an employee's 12th offense subjects the employee to discharge. According to Dixon's rules of conduct, employees are required to monitor the use of all their own benefit time and to use it within the parameters of established timekeeping guidelines. Newstrand testified that it is the policy of IDOC that employees are required to notify human resources with any address change.

On December 29, 2015, Emmole submitted an NOA slip for the purposes of attending military drill on January 8 and 9, 2016, further indicating "Dock Time" on the slip. This request was approved by the IDOC. Emmole did not attend drill on January 8 and 9, 2016, did not inform IDOC he was not attending drill, and did not attend work at IDOC on those days. On May 25, 2016, Emmole submitted an NOA slip for the purposes of attending military drill on June 3 and 4, 2016, further indicating "Vacation" on the slip. This request was approved by the IDOC. Emmole did not attend drill on June 3 and 4, 2016, did not inform IDOC he was not attending drill, and did not attend work at IDOC on those days. On November 1, 2016, Emmole submitted an NOA slip for the purposes of attending military drill on November 4 and 5, 2016, further indicating "Vacation" on the slip. This request was approved by the IDOC. Emmole did not attend drill on November 4 and 5, 2016, did not inform IDOC he was not attending drill, and did not attend work at IDOC on those days. On January 3, 2017, Emmole submitted an NOA slip for the purposes of attending military drill on January 6 and 7, 2017, further indicating "Accumulated Holiday." This request was approved by the IDOC. Emmole did not attend military drill on January 6 and 7, 2017, did not inform IDOC he was not attending drill, and did not attend work at IDOC on those days. On March 28, 2017, Emmole submitted an NOA slip for the purposes of attending military drill on March 31, 2017 and April 1, 2017, further indicating "Accumulated Holiday." This request was approved by the IDOC. Emmole did not attend military drill on March 31, 2017 and April 1, 2017, did not inform IDOC he was not attending drill, and did not attend work on those days. The warden testified that if Emmole did not report to his military drill, he expected Emmole to inform him because he might not have had those days approved off work because of operational needs, including overtime scheduling.

On April 3, 2017, IDOC investigator Morse learned that Emmole did not attend his military drill weekends that were previously approved off by IDOC due to suspected abuse of alcohol. Morse reported this information to officials at Dixon for further handling consistent with IDOC policy and procedure. Emmole was referred to the Employee Review Board ("ERB") for unauthorized absences and falsification of NOA slips.

On June 26, 2017, Emmole's mother died. Emmole was absent from work June 22, 2017 through June 24, 2017, June 27, 2017, and July 5, 2017. On July 6, 2017, Emmole submitted an NOA slip for those days seeking to use benefit time due to a death in the family. Emmole did not submit FMLA paperwork for those days. Newstrand testified she determines if an employee is eligible for FMLA leave and, if eligible, provides the employee with appropriate paperwork, including notice of eligibility, an acknowledgment that they have received the form, certification forms, and fact sheets. Newstrand learned that Emmole had three days of unauthorized absences and, on June 27, 2017, sent Emmole, by U.S. mail, an eligibility notice of rights and responsibilities of employee and family's serious medical condition with certification form to Emmole's last known address on file. Newstrand did not receive any FMLA paperwork back from Emmole. The eligibility notice and medical certification form explained that Emmole's failure to return a completed certification form by July 14, 2017, could result in the denial of FMLA protection or delay the start of entitlements. When Emmole returned to work, he submitted NOA slips requesting "Sick Family" time to cover his absences, due to not having available sick time. On July 18, 2017, the IDOC sent Emmole a denial notice of FMLA protection to his address on file, stating that because Emmole did not submit a signed medical certification form, FMLA protection was denied. Emmole testified he did not have any reason to believe that IDOC would have denied his FMLA time had he submitted the completed medical certification form. Emmole also testified that at some point he provided Newman with a doctor's note from his mother's doctor and his mother's obituary which were then forwarded to the warden. Emmole was referred to the ERB for a hearing related to his unauthorized absences prior to and following the death of his mother.

On August 16, 2017, Emmole appeared with a union representative before the ERB for two hearings for unauthorized absences – one for his absences for the purpose of attending military drills, and one for the June and July 2017 absences that were not supported by proper FMLA paperwork. The assistant warden and ERB hearing officer (Sonja Nicklaus) declared that based on evidence presented at the hearing, it was determined that Emmole was absent from the facility for 13 days of unapproved time off for military purposes when he did not in fact report for military duty. Emmole was approved for this time off for the purposes of attending military duty, not based on other benefit time. Nicklaus also found that Emmole failed to notify IDOC that he did not report for military duty when he was approved for military purposes. Based on his conduct, Nicklaus determined that Emmole had 13 unauthorized absences in violation of Directive 03.01.301 and recommended that Emmole be discharged from IDOC. Additionally, Emmole's absences on June 22, 2017 through June 24, 2017, June 27, 2017, and July 5, 2017, were considered unauthorized and in violation of Directive 03.01.301 and discharge was recommended. Evidence at the ERB hearing found that Emmole had a total of 20 unauthorized absences – two from prior discipline, 13 from not attending military drill training, and five from failing to submit proper FMLA paperwork. Emmole was terminated from IDOC employment effective October 12, 2017.

Emmole claims his brother Nick Emmole is a similarly situated IDOC employee because Emmole believes Nick had FMLA leave time approved. Nick is not a member of the military and Emmole guessed Nick had been disciplined in the past but does not know for certain. Evidence revealed Nick was not eligible for FMLA because he had not been employed with the State of Illinois the length of time required to be eligible for FMLA. According to Nick's time sheet, Nick had sick or personal time available for the days he took off in June and July of 2017.

Emmole claims he was discriminated against based on his military status when he was terminated from his IDOC employment for using benefit time he claims he had available in 2016 and 2017. Emmole further claims IDOC interfered with his rights under FMLA by denying him leave.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (citation omitted). If the non-moving party "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' summary judgment must be granted." *Blow v. Bijora, Inc*., 855 F.3d 793, 797-98 (7th Cir. 2017) (citation omitted).

**ANALYSIS**

**Plaintiff's claim of discrimination under USERRA**

Defendant IDOC first seeks summary judgment as to Emmole's USERRA termination claim. In his complaint, Emmole alleges IDOC discriminated against him regarding the terms and conditions of his employment in that he was denied the opportunity to use his military weekend days. Under USERRA in relevant part, "[a] person who is a member of…or has an obligation to perform service in a uniformed service shall not be denied…retention in employment…by an employer on the basis of that membership…or obligation." 38 U.S.C. § 4311(a). "Section 4311(a) requires [employers] to treat persons on military service the same as other employees." *Sandoval v. City of Chicago*, 560 F.3d 703, 704 (7th Cir. 2009). The statute's "burden-shifting" framework further provides that an employer is considered to have engaged in the prohibited action if the employee's status in the uniformed service "is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership…or obligation for service." § 4311(c)(1); *Crews v. City of Mt. Vernon*, 567 F.3d 860, 864 (7th Cir. 2009).

4

It is undisputed that Emmole was a member of the armed services (as a guardsman with the Illinois Air National Guard), had an obligation to attend weekend military drills, and was denied retention in employment (terminated). IDOC argues Emmole cannot show he was terminated because of his obligations to attend weekend military drills or that his military status or his service obligations to attend the drills were motivating factors in IDOC's decision to terminate him. "To meet the 'motivating factor' standard, a plaintiff does not necessarily need a direct admission from the employer. [He] may rely instead on circumstantial evidence that creates a 'convincing mosaic' from which a reasonable jury could infer discriminatory motive." *Arroyo v. Volvo Group North America, LLC*, 805 F.3d 278, 284 (7th Cir. 2015).

Emmole argues he was under a military obligation and was ordered to attend military drill weekends in 2016 and 2017, and his failure to attend drills on any given weekend did not change the fact that the military drills were ordered and IDOC was not allowed to interfere with that obligation. He argues further he used his own earned benefit time for these military drill weekends and despite the fact that he did not attend his military drills, IDOC cannot specify how an employee uses his benefit time. What IDOC did, according to Emmole, was discipline him (terminate him) for not attending drill. IDOC responds that Emmole has merely concluded that he was discriminated against and cannot point to any evidence that his status as a guardsman played any role in IDOC's decision to terminate him. Instead, IDOC maintains that Emmole was terminated in violation of Directive 03.01.301. The ARB hearing provided evidence that Emmole was absent from the facility for a total of 13 days on approved time for military leave – not based on other benefit leave as Emmole argues. Testimony revealed that correctional officers at IDOC are generally not approved at will for any type of benefit time. Approval for leave is based on seniority, annual bidding process, and staffing needs. Further, limits on benefit time is based on the needs of the facility. IDOC points out that Emmole's NOA slips for his military training were being approved without consideration of seniority, bidding, or staffing needs. As argued by IDOC, Emmole "was treated better than non-military employees with respect to his requests for days off."

In *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), the facts revealed plaintiff's supervisors' actions were motivated by hostility toward plaintiff's military obligations (weekend drills). Plaintiff's supervisor scheduled plaintiff for additional shifts without notice so that he would "pay back the department" for other employees having to have fill his schedule during his military weekends. The supervisor also told a co-worker that plaintiff's military duty had been a "strain on the department" and that she wanted to "get rid" of plaintiff. *Id*. at 413-14. Plaintiff was ultimately terminated, and he then brought suit under USERRA. The Supreme Court held in favor of plaintiff finding that "if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." *Id*. at 422 (emphasis omitted). Here, unlike *Staub*, Emmole has presented no evidence to show that the warden, Newstrand, Newman, or Nicklaus was motivated by antimilitary animus that caused any of them to support Emmole's termination. The evidence showed that IDOC, through its supervisors at Dixon, provided Emmole with time off to attend his military drill weekends. Emmole's NOA slips were approved specifically because of his military obligation – not with respect to his ability to use any particular benefit time. When it came to light that Emmole did not, in fact, attend to his military obligations, his time off requests became

5

"unauthorized absences" under Directive 03.01.301. And because he had accumulated more than 12 "unauthorized absences," under IDOC policy, he was subject to discharge. The evidence does not show that this decision was based on an antimilitary animus.

The court agrees with IDOC that Emmole has failed to provide even circumstantial evidence (to create a "convincing mosaic") that his status as a member of the military was a "motivating factor" in his termination or that he was terminated based on his obligations to attend weekend military drills.

Even if Emmole could establish a *prima facie* case of discrimination based on his termination as a result of discrimination against his military status and obligation (which the court does not believe he could), the evidence is clear that IDOC would have terminated Emmole based on his violation of Directive 03.01.301. As noted above, the ARB found that Emmole had over 12 "unauthorized absences." This qualified Emmole for discharge. The court finds the evidence sufficient to show that Emmole would have been terminated from IDOC regardless of his military status. Moreover, the court acknowledges the well-settled principle that "[t]he federal courts are not a super-personnel department that second-guesses facially legitimate employer policies. It is not the role of the court to determine whether an employer's expectations were fair, prudent, or reasonable. So long as its management decision was not a guise for a discriminatory purpose, [the court] must respect that decision." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (citation omitted). Here the court sees no guise for a discriminatory purpose.

### Plaintiff's claim under FMLA

Next, Emmole claims IDOC interfered with his ability to take leave under FMLA. Under FMLA, an eligible employee is entitled to as many as 12 weeks of leave per year for numerous reasons, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). And "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." *Id.* § 2615(a)(2). "To prevail on a claim for FMLA interference, the employee must prove that: (1) he was eligible for FMLA protections; (2) his employer was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take FMLA leave; and (5) his employer denied him FMLA benefits to which he was entitled." *Scruggs v Carrier Corp.*, 688 F.3d 821, 825 (7th Cir. 2012) (citation omitted). Emmole bears the burden to prove an FMLA interference. *Simpson v. Office of Chief Judge of Circuit Court of Will County*, 559 F.3d 706, 712 (7th Cir. 2009).

Emmole requested FMLA leave time for June 22 through 24, 2017, June 27, 2017, and July 5, 2017, for a family medical emergency and his mother's subsequent death. Emmole's mother died on June 26, 2017. There is no dispute that IDOC is a covered employer under FMLA and that Emmole was eligible for FMLA protections. The FMLA issue appears to center around whether Emmole provided sufficient notice to IDOC of his intent to take FMLA leave. "The employee's notice obligation is satisfied so long as he provides information sufficient to show that he likely has an FMLA-qualifying condition." *Burnett v. LFW Inc.*, 472 F.3d 471, 479 (7th Cir. 2006) (emphasis omitted). Additionally, the "an employee must comply with the employer's usual and customary

6

notice and procedural requirements for requesting leave [under FMLA]." 29 C.F.R. § 825.303(c); *see also Brown v. Automotive Components Holdings, LLC*, 622 F.3d 685, 687 (7th Cir. 2010) ("[A]n employer is entitled to adhere to its own leave policies and procedures when doing so does not otherwise violate the FMLA."). Here, the evidence revealed Newstrand learned that Emmole had three days of unauthorized absences. Therefore, on June 27, 2017, she sent Emmole, by U.S. mail, an FMLA eligibility notice with a certification form to Emmole's last known address on file with IDOC. Newstrand did not receive any FMLA paperwork back from Emmole. The notice and certification form explained that Emmole's failure to return a completed certification form by July 14, 2017, could result in the denial of FMLA protection.

The typical FMLA interference claim that focuses on the "sufficient notice" requirement examines the nature and quality of the notice provided to the employer through the certification. Here, Emmole admits he failed to return the FMLA certification at all. Therefore, no FMLA notice was provided to IDOC. Emmole further testified he had no reason to believe that IDOC would not have granted him FMLA leave had he submitted the certification. In response to IDOC's argument, Emmole argues he provided Newman a doctor's note from his mother's doctor and his mother's obituary. Evidence revealed Newstrand received these documents. Under FMLA and IDOC's policies and procedures, this "notice" is insufficient to have put IDOC on proper notice that Emmole was eligible for FMLA leave. The court finds Emmole has failed to provide sufficient evidence to show IDOC interfered with his FMLA leave. [1]

Additionally, the court agrees with IDOC that Emmole would have been terminated notwithstanding his June and July 2017 absences, due to his 13 unauthorized absences in violation of Directive 03.01.301, as discussed above.

**CONCLUSION**

For the foregoing reasons, defendant Illinois Department of Corrections' motion for summary judgment [41] is granted. Final judgment shall enter.

Date: 02/14/2020					ENTER:

						*Philip G. Reinhard*
						United States District Court Judge

						Electronic Notices. (LC)

---

[1] The court briefly takes note of Emmole's position that his brother Nick provided IDOC with the same paperwork (doctor's note and obituary) and had his time off approved by IDOC. The record reflects Nick was not eligible for FMLA protection due to the length of time he had been employed with IDOC and, therefore, he used available sick or personal time for the requested days off. Nick cannot be considered a "similarly situated" employee.

7